**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA and )
MARY ARNDT, Revenue Officer )
of the Internal Revenue Service, )
                              )
      Plaintiffs, )
                              )
      v. )              Civil Action No. 1:09-cv-158-SJM
                              )
EBERT G. BEEMAN, )
                              )
      Defendant, )
                              )
      v. )
                              )
GE CLIENT SERVICE )
BUSINESSES, *et al.,* )
                              )
      Third-party Defendant. )

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., District J.,

     This civil action was commenced on June 30, 2009 when the United States and

Mary Arndt, acting as Revenue Officer of the Internal Revenue Service (IRS), filed a

complaint against Defendant Ebert G. Beeman to enforce an IRS summons.  The

complaint arose out of the Service's investigation into Beeman's federal income tax

liability relative to certain tax years.  On May 2, 2008, the IRS, then acting through

Revenue Officer Ed Pattison, issued a summons to Beeman directing him to appear at

a specified location on June 12, 2008 and to produce for examination certain books,

papers, records or other data pertinent to the on-going investigation.

     Beeman partially complied with the subpoena but, as to tax years 2000 and

2001, the IRS deemed his compliance insufficient.  Thus, the complaint seeks an order

which, among other things, would direct Beeman to fully comply with the terms of the

summons, particularly as it relates to the years 2000 and 2001.[1]

On October 6, 2009 and again on October 19, 2009, Beeman, proceeding *pro se*, filed two documents, both entitled "Specific Affidavit of Negative Averment, Opportunity to Cure, and Counterclaim" [7] and [9]. In these documents, Beeman purports to assert claims against Arndt and Pattison as well as GE Client Business Services and Keith S. Sherin relative to certain liens, levies and/or garnishments which were imposed in January and September of 2009 against his property and/or bank accounts. Arndt and Pattison have moved for summary judgment on these claims, while GE Client Business Services has filed a motion to dismiss them. To the extent Beeman's "Specific Affidavit of Negative Averment, Opportunity to Cure, and Counterclaim" constitutes an answer to the Plaintiffs' complaint, Plaintiffs have filed a motion to strike the answer as untimely. Also pending before the Court, of course, is the Government's original complaint to enforce the IRS summons. After considering the appropriate standards of review and the relevant background facts, I will address each of these matters in turn.

## I.  STANDARD OF REVIEW

A.    *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521(1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969)

---

[1] This Court has jurisdiction over the matters raised in the complaint pursuant to 28 U.S.C. § 1345 and 26 U.S.C. §§ 7402(b) and 7604(a).

(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); *Smith v. U.S. District Court*, 956 F.2d 295 (D.C. Cir. 1992); *Freeman v. Department of Corrections*, 949 F.2d 360 (10th Cir. 1991).  Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in the pleadings in favor of the complainant.  *Gibbs v. Roman*, 116 F.3d 83 (3d Cir. 1997).  *See, e.g., Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); *Markowitz v. Northeast Land Company*, 906 F.2d 100, 103 (3d Cir. 1990)(same).  Because Beeman is proceeding *pro se* in this case, the foregoing standards will be applied.


      B.    <u>Motion to Dismiss</u>

      In reviewing a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), the claims at issue must be viewed in the light most favorable to the complainant and all the well-pleaded allegations must be accepted as true.  *Erickson v. Pardus*, 551 U.S. 89, 95 (2007).  A complaint must be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (rejecting the traditional 12(b)(6) standard set forth in <u>Conley v. Gibson</u>, 355 U.S. 41 (1957)).  *See also Ashcroft v. Iqbal*, ___ U.S. ___, ___, 129 S. Ct. 1937 (May 18, 2009) (specifically applying *Twombly* analysis beyond the context of the Sherman Act).

      A court need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint.  *See California Pub. Employee Ret. Sys. v. The Chubb Corp*., 394 F.3d 126, 143 (3d Cir. 2004) *(citing Morse v. Lower Merion School Dist*., 132 F.3d 902, 906 (3d Cir. 1997))*.  Nor must a court accept legal conclusions set forth as factual allegations.  *Twombly*, 550 U.S. at 556 *(citing Papasan v. Allain*, 478 U.S.  265, 286 (1986))*.  *See also McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.") *(quoting*

*Iqbal*, ___ U.S. at ___, 129 S. Ct. at 1949) (alteration in the original).  A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556.  Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief."  *Smith v. Sullivan*, 2008 WL 482469, at *1 (D. Del. February 22, 2008) *(quoting Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)).  "This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 232 *(quoting Twombly*, 550 U.S. at 556 n.3).

Recently, the Third Circuit expounded on the *Twombly/Iqbal/Phillips* line of cases:

> To prevent dismissal, all civil complaints must now set out sufficient factual matter to show that the claim is facially plausible.  This then allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct.
>
> * * *
>
> After *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis.  First, the factual and legal elements of a claim should be separated.  The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief.  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to show such an entitlement with its facts.  As the Supreme Court instructed in *Iqbal*, where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief. This plausibility requirement will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

C.   Motion for Summary Judgment

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact.  *See* Fed. R. Civ. P. 56(c); *Krouse v. American Sterilizer Company*, 126 F.3d 494, 500 n.2 (3d Cir. 1997).  The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Country Floors, Inc. v. Partnership Composed of Gepner and Ford*, 930 F.2d 1056, 1061 (3d Cir. 1990).  Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'"  *Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990) (*quoting Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990)).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial.  *Matsushita Elec. Indus. Company v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-461 (3d Cir. 1989) (the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment).  The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information

5

contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. *Celotex*, 477 U.S. at 322; *Country Floors*, 930 F.2d at 1061.

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 248 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." *Firemen's Ins. Company of Newark, N.J. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247-249.

In this case, Arndt and Pattison filed their motion for summary judgment supported by affidavits which set forth the relevant factual history. Beeman was ordered to submit a response to this motion and, on December 18, 2009, he filed a document containing two subheadings, *to wit*, "Specific Affidavit of Negative Averment, Opportunity to Cure, and Counterclaim" and "Brief in Support of [Third Party-] Plaintiff's Motion for Summary Judgement" [sic].[2]  As will be explained in more detail below, this document does not raise any genuine dispute as to the facts outlined in the motion for summary judgment filed by Arndt and Pattison. Accordingly, those facts stand unrebutted and they form the basis of the Court's background discussion below.

---

[2] Although Beeman purported to file a brief in support of his own motion for summary judgment on his third-party claims and counter-claim, the docket reflects that he never actually filed a separate motion for summary judgment.

## II.  BACKGROUND

This matter arises out of an investigation the IRS conducted relative to Beeman's
apparent failure to file federal income tax returns and/or pay delinquent federal income
tax liabilities for numerous tax years.  Revenue Officer Pattison was assigned to the
case when it was transferred to him on October 19, 2007.  Pattison conducted a full
analysis of the matter on October 23, 2007.  At the time of receipt into his inventory, the
case involved unfiled income tax returns for the years 2000, 2001, 2002, 2005, and
2006 and unpaid income taxes for the years 1994, 1995, 1996, 1997, 2003, and 2004.
(Decl. of Edson Pattison, Ex. 1 to Br. in Support of Mot. of the United States for Summ.
Judg. [15-2] at ¶ 3.)  At the time the case was assigned to Pattison, the IRS held a lien
against Beeman in the amount of $1,729,371.71.  (*Id.* at ¶ 4.)

During the course of the following year, Beeman filed the 2005 and 2006 income
tax returns showing taxes owed in the respective amounts of $180.00 and $397.00 and
a 2002 income tax return with a tax balance of $3,462.00.  Interest and penalties were
assessed on these unpaid balances.  (Pattison Decl. at ¶ 4.)  Consequently, as of
October 11, 2008, when Beeman's 2002 federal income tax return was filed (*id.*), his
case involved unfiled tax returns for the years 2000 and 2001 and unpaid tax liabilities
for the years 1994-1997 and 2002-2006.

Part of Pattison's duties as Revenue Officer include the filing of notices of federal
tax liens in order to protect the Government's interest when taxes are owed and remain
unpaid.  (Pattison Decl. at ¶ 5.)  To accomplish the task of filing a Notice of Federal Tax
Lien, the IRS agent inputs and/or verifies the relevant information on the Integrated
Collection System and then requests that the lien be filed in the county where the
taxpayer has his or her permanent address.  (The lien is also recorded in any county
where the taxpayer owns real estate, if different from the county of residence.)  (*Id.*)

In this case, Beeman's 2005 and 2006 tax returns were assessed on July 14,
2008 and Beeman was given notice of the assessment and demand for payment that
same day.  (Pattison Decl. at ¶ 6.)  Following Beeman's failure to pay his tax liability, a

Notice of Federal Tax Lien was filed on either July 28 or August 8, 2008.  (*Id at* ¶¶ *5-6.*)[3]
Similarly, after Beeman's 2002 tax return was assessed on December 1, 2008, notice
of the assessment and demand for payment were given that same day.  (Pattison Decl.
at ¶ 6.)  Following Beeman's failure to pay the tax liability, a Notice of Federal Tax Lien
was filed on January 20, 2009.  (*Id*.)

 As part of the foregoing process, the lien notices were sent to Beeman by the
IRS's Centralized Lien Unit.  (Pattison Decl. at ¶ 6.)  The notices were presumably
received by Beeman, inasmuch as they were never returned as undeliverable.  (*Id*. at
¶ 8.)

On February 27, 2009, Beeman's collection case was reassigned to Revenue
Officer Mary Arndt, who conducted a full analysis on April 16, 2009.  At the time of
receipt into her inventory, the case involved unfiled income tax returns for the years
2000 and 2001 and unpaid income taxes for the years 1994-1997 and 2002-2006.
(Decl. of Mary Arndt, Ex. 2 to Br. in Support of Mot. of the United States for Summ.
Judg. [15-2] at ¶¶ 3, 5.)

Arndt determined that Beeman had submitted a timely Form 12153 ("Request for
a Collection Due Process or Equivalent Hearing under IRC 6320") relative to the Notice
of Federal Tax Lien which had been recorded in Erie County on January 20, 2009 and
which related to tax year 2002.  Arndt forwarded this Form 12153 Request to the IRS's
Appeals Office on April 30, 2009.  (Arndt. Decl. at ¶ 6.)

Arndt further determined that Beeman had been issued the Letter 1058 ("Final
Notice of Intent to Levy and Notice of Your Right to a Hearing"), as required under
§§ 6330 and 6331 of the Internal Revenue Code, on August 14, 2007 relative to his tax
liabilities for the years 1994-1997 and 2003-2004.  The Letter 1058 relative to tax years

---

[3]The precise date of the filing of the Notice of Federal Tax Lien relative to tax
years 2005 and 2006 is unclear, as Pattison's declaration appears to give two
conflicting dates for the filing.  (*See* Pattison Decl. at ¶p 5-6.)  This discrepancy,
however, is not material to the issues before the Court.

2005 and 2006 had been issued to Beeman on September 2, 2008.  The Letter 1058 relative to tax year 2002 was issued to Beeman on April 16, 2009.  All notices had been sent to Beeman's last address of record and no collection Due Process appeals had been received as to them.  (Arndt Decl. at ¶ 5.)

On September 14, 2009, Arndt issued a Form 668-W "Notice of Levy on Wages, Salary and Other Income to GE Client Business Services" so as to attach Beeman's pension benefits from his former employer.  This levy pertained to the unpaid income tax liabilities for tax years 1994-1997 and 2003-2006, totaling $2,068,600.43.  (Arndt Decl. at ¶ 8.)

### III.  DISCUSSION

A.  <u>Beeman's Counterclaim/Third-Party Claim</u>

In his two documents entitled "Specific Affidavit of Negative Averment, Opportunity to Cure, and Counterclaim" (Docs. [7] and [9]), Beeman challenges the lawfulness of the lien notice that was recorded in Erie County on January 20, 2009 relative to his 2002 federal income tax liabilities and the lien and/or levy that was imposed in September of 2009 relative to his tax liabilities for the years 1994-1997 and 2003-2006.  Beeman's sole contention regarding these measures is that they were unlawful because they were not first approved by a District Court.  Arndt and Pattison contest the sufficiency of this claim on numerous grounds, but I need not address all of them because, in light of the record before me, Beeman's allegation of misconduct fails on its merits.

The IRS's authority to impose tax liens is established by § 6321 of the Internal Revenue Code, which provides:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C.A. § 6321.  Tax liens thus arise by operation of law, but they become valid and take priority as against the interests of certain other parties only when notice of the lien is recorded in accordance with § 6323 of the Code.  *See* 26 U.S.C.A. § 6323(a).

When tax liens are imposed, "the Secretary" – a term statutorily defined to mean "the Secretary of the Treasury *or his delegate,*" 26 U.S.C.A. §7701(11)(B) (emphasis added)[4] – must provide notice of the lien and an opportunity for the taxpayer to have a hearing as set forth in § 6320.  Specifically, the Secretary, upon filing notice of the lien, must give the taxpayer written notice within five business days that the lien notice has been filed.  26 U.S.C.A. § 6320(a).  The notice to the taxpayer must indicate "in simple and nontechnical terms" (A) the amount of the unpaid tax; (B) the right of the person to request a hearing within a specified time period; (C) the administrative appeals available to the taxpayer and the procedures relating to such appeals; and (D) the relevant statutory provisions and procedures relating to the release of liens on property. *Id*. at § 6320(a)(3).

The authority of the Secretary to impose levies is established by § 6331 of the Internal Revenue Code, which provides (in relevant part) that:

> If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax.

26 U.S.C.A. § 6331(a).  Before a levy can be made, the Secretary must comply with certain notice requirements, as detailed in §§ 6330 and 6331 of the Code.  *See* 26 U.S.C. § 6330 and 6331(d).

As I have already noted, the term "Secretary" in these provisions refers to the

---

[4] This is in contrast to the term "Secretary of the Treasury," which is used elsewhere in the Code and which is defined to mean "the Secretary of the Treasury, personally, and shall not include any delegate of his."  *Id*. at § 7701(11)(A).

Secretary of the Treasury *or his delegate*," 26 U.S.C.A. § 7701(11)(B) (emphasis

added), the latter term being defined as

> ... any officer, employee, or agency of the Treasury Department duly
> authorized by the Secretary of the Treasury directly, or indirectly by one or
> more redelegations of authority, to perform the functions mentioned or
> described in the context ..."

26 U.S.C.A. § 7701(12)(A)(i).  Significantly for purposes of this case, the Secretary re-

delegated to employees of the IRS the power to levy property in the hands of a third

party, *see* IRS Delegation Order 5-3 (1-3) (attached as Ex. 3 to Br. in Supp. of Mot. of

the United States for Summ. Judg. [15-4]), and to sign and issue notices of federal tax

liens, *see* IRS Delegation Order 5-4 (1-7) (attached as Ex. 4 to Br. in Supp. of Mot. of

the United States for Summ. Judg. [15-5]).

Here, Beeman's sole legal basis for challenging the legality of the January 20,

2009 lien notice and the September 14, 2009 levy is that they were "not authorized by a

US District Court Order as is required by the US Code." (Specific Affidavit of Negative

Averment, Opportunity to Cure, and Counterclaim ([7] and [9]) at p. 1.)  Beeman does

not cite any particular provision of the Internal Revenue Code, or the United States

Code in general, in support of this supposed requirement.  To the best of this Court's

knowledge, Beeman's theory finds no support in any of the relevant provisions of the

Internal Revenue Code (United States Code title 26, Subtitle F, Chapter 64,

Subchapters C and D) which address "Lien[s] for Taxes" and "Seizure of Property for

Collection of Taxes."  *See generally* 26 U.S.C. §§ 6320-6327 and 6330-6344.

Certainly, no requirement of district court pre-authorization can be found in §§ 6320,

6330 and 6331 of the Code.  *See* 26 U.S.C.A. §§ 6320, 6330, 6331.

It may be that, in referring to district court authorization, Beeman is inaccurately

invoking § 6323(f) of the Code, which addresses the location and form for filing lien

notices.  According to § 6323(f)(1)(A)(i) and (ii), a notice of lien shall generally be filed

"in one office within the State (or the county, or other governmental subdivision), as

designated by the laws of such State, in which the property subject to the lien is

11

situated...“; however, if the State has not by law designated one such office, the notice of lien shall be filed "[i]n the office of the clerk of the United States district court for the district in which the property subject to the lien is situated." *Id*. at § 6323(f)(1)(B).

Of course, nothing in this provision requires that a lien notice first be approved by a federal district court; it requires only that the lien notice be filed with the clerk of the district court in certain circumstances which do not apply in this case.  Beeman is a resident of Erie County, Pennsylvania, and therefore his residence and personal property – including intangible property such as pension benefits – are deemed to reside there as well.  *See* 26 U.S.C.A. § 6323(f)(2) (real property is deemed to be situated where it is located and personal property, whether tangible or intangible, is deemed to be situated at the residence of the taxpayer at the time the lien is filed).  *See also Fusaro v. C.I.R.*, No. 13282-01L, 2003 WL 23018836 at *5 (U.S. Tax. Court  Dec. 29, 2003) (situs of taxpayer's pension plan, as personal property, for purpose of notice of federal tax lien, was in state in which taxpayer resided, rather than state where pension plan was administered).  Further, Pennsylvania has adopted the Uniform Federal Lien Registration Act, 74 Pa. Stat. Ann. §§ 157-1 *et seq.* (West 2008), which states that:

> Notices of Federal liens upon personal property, whether tangible or intangible, for obligations payable to the United States and certificates and notices affecting the liens shall be filed **in the office of the prothonotary of the county where the person against whose interest the lien applies resides** at the time of filing of the notice of lien.

*Id*. at § 157-3(c) (emphasis added).  *See also id.* at § 157-3(b) (requiring that such liens upon real property be filed with the prothonotary of the county in which the real property is situated).  Accordingly, since Beeman and his property are located within Erie County, the Erie County Prothonotary's office was the proper site for the filing of the tax lien notices at issue here.

Beeman's only other argument pertaining to the pending motion for summary judgment is that the motion should be denied as moot "because the defendants acquiesced by their failure to respond to my Specific Affidavit of Negative Averment

12

filing on October 19, 2009.  I do not give the Court permission to dismiss my counter claims." (Br. in Supp. of [Third-Party-] Pl.'s Mot. for Summ. Judg. [16] at p. 2.)  As to this point, Beeman appears to be laboring under the misapprehension that Arndt and Pattison were untimely in responding to his counter-claim/third-party claim against them and that he is therefore entitled to judgment by default.

Arndt and Pattison, however, were not untimely in filing their responsive pleading.  Beeman's first "Specific Affidavit of Negative Averment, Opportunity to Cure, and Counterclaim" [7] was filed on October 6, 2009.  The Federal Rules of Civil Procedure afford the United States, its agencies, officers and employees sixty (60) days from the date of service in which to respond to a claim, *see* Fed. R. Civ. P. 12(a)(2) and (3), a fact of which Beeman was specifically advised during this Court's October 16, 2009 show cause hearing.  Assuming for the sake of argument that Arndt and Pattison had been properly served on October 6, 2009, when the first "Specific Affidavit of Negative Averment, Opportunity to Cure, and Counterclaim" was filed, the sixtieth day would have fallen on December 5, 2009; however, since December 5 was a Saturday, the Government had until the following Monday – or December 7, 2009 – in which to submit its response to Beeman's claims.  *See* Fed. R. Civ. P. 6(a)(1)(C).  Arndt and Pattison filed their motion for summary judgment on that day and, therefore, their response was timely.

This is so notwithstanding the fact that Beeman purported to afford Arndt and Pattison only eight (8) days to "cure their dishonor" by complying with one of four specified courses of action predetermined by him, and notwithstanding Beeman's claim that failure to do so would result in "default," which Beeman would consider to be "complete agreement with all of the terms, provisions, and conditions of this contract," and which, in his view, would result in a "self-executing confession of judgment by all parties, named or unnamed" in the amount of $1,000,000 "per violation, per officer..." (Specific Affidavit of Negative Averment, Opportunity to Cure, and Counterclaim" [7] at pp. 1-2.)  Notably, Beeman's "Counterclaim" within this document purported to impose

13

additional damages in the event the named Defendants failed to pay this judgment – *to wit*, damages of $1 million on the 31st day of default, $3 million on the 61st day of default, or $5 million per day on the 91st day of default as well as punitive damages in an amount "seven (7) times the original amount of damages."  (*Id*. at p. 3.).  The Court also notes that, on November 20 and December 1, 2009, Beeman filed (respectively) his first and second Notices of Fault and Demand for Payment ([10] and [12]),[5] in which he demanded payment in the amount of $7 million "as per agreement."

Unfortunately for Beeman, the unilaterally imposed terms of his "Specific Affidavit of Negative Averment, Opportunity to Cure, and Counterclaim" have no legal effect and do not form the basis of any legally recognizable contract – much less a "contract in admiralty,"[6] as he describes it.  (*Id*. at p. 2.)  More importantly, they most certainly do not override the provisions of the Federal Rules of Civil Procedure, which govern the civil proceedings in this Court.  Accordingly, the Court will not disregard the timely motion for summary judgment filed by Arndt and Pattison, not withstanding the fact that Beeman "do[es] not give the Court permission to dismiss [his] counter claims." (Br. in Supp. of [Third Party] Pl.'s Mot. for Summ. Judg. [16] at p. 2.)

Here, Arndt and Pattison have made a prima facie showing that they were entitled and authorized to effectuate the lien notice of January 20, 2009 and the September 14, 2009 levy and that all proper notices were given.  Beeman, on the other hand, has failed to present any evidence to contradict the facts established by Arndt

---

[5] The docket reflects that the Second Notice was actually filed twice, the first filing having occurred on November 20, 2009 [11] contemporaneously with the filing of the First Notice.

[6] In his "Specific Affidavit of Negative Averment" Beeman indicated that he was seeking "a remedy in Admiralty pursuant to "[t]he Saving to the Suitors Clause" at 28 U.S.C. § 1333(1), which confers on the United States District Courts original, exclusive jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."  28 U.S.C.A. § 1333(1).  Beeman also describes the terms of his "Opportunity to Cure" as "a contract in admiralty."  (Specific Averment [7] at p. 2.)

and Pattison.  Fundamentally, Beeman has failed to offer any evidence which could give rise to a genuine issue of material fact concerning the lawfulness of the January 2009 lien notice and the September 2009 levy.  Accordingly, since Beeman has failed to present any evidence whereby a fact-finder could find that the Government's lien and/or levy were unlawful, Beeman has no viable basis to challenge those actions.  Moreover, even if Beeman had produced evidence of a violation, his only remedy would be against the United States and, therefore, his claims against Arndt and Pattison individually would fail for that reason as well.  *See* 26 U.S.C.A. §§ 7432, 7433.

Beeman has also filed a claim against GE Client Business Services and Keith S. Sherin, apparently for their action in honoring the levy and garnishing Beeman's pension benefits.[7]  For the reasons previously discussed, Beeman has failed to raise a genuine issue of fact as to the alleged unlawfulness of the lien and levy.  It follows that, to the extent GE Client Business Services and/or Keith Sherin complied with the terms of the levy, Beeman lacks any legal basis to challenge these actions as unlawful.  In addition, the Internal Revenue Code specifically discharges from liability any persons who comply with the terms of an IRS levy:

> Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the Secretary, surrenders such property or rights to property (or discharges such obligation) to the Secretary (or who pays a liability under subsection (d)(1)) shall be discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to such property or rights to property arising from such surrender or payment.

26 U.S.C.A. § 6332(e).  Accordingly, Beeman's claim against GE Client Business Services and/or Keith Sherin is, on its face, legally insufficient and the Defendants' motion to dismiss the claim will be granted.

---

[7] These Defendants filed a motion to dismiss the claim against them and Beeman was given until February 18, 2010 to file a response in opposition to the Defendants' motion.  To date, no response has been filed by Beeman.

B.     The Complaint to Enforce Summons

Beeman's case had originally involved unfiled tax returns for the years 2000, 2001, 2002, 2005, and 2006 and, on May 2, 2008, he was served with a summons for records pertaining to his income during those years.  Beeman subsequently filed returns for years 2002, 2005 and 2006 but did not pay the taxes due.  Moreover, while Beeman had produced certain documentation in response to the summons, the IRS took the position that he had not fully complied with the terms of the summons as it pertained to the 2000 and 2001 tax years.  Consequently, the summons was referred to the Department of Justice for enforcement and this civil action was filed.

When enforcement of an IRS summons is challenged, the Government has the initial burden of showing:  (i) that the summons was issued for a proper purpose, (ii) that the information sought may be relevant to that purpose; (iii) that the information sought is not already in possession of the IRS, and (iv) that the government has complied with the administrative steps required by law with respect to the issuance and service of a summons.  *Wheeler v. United States*, 459 F. Supp. 2d 399, 401-02 (W.D. Pa. 2006) (*citing United States v. Powell*, 379 U.S. 48, 57-58 (1964); *Conner v. United States*, 434 F.3d 676, 680 (4th Cir.2006); *United States v. Rockwell Intern*., 897 F.2d 1255, 1262 (3d Cir.1990)).  The Government's burden to produce a prima facie showing of good faith in issuing the summons is only slight or minimal and can be satisfied by the IRS agent's affidavit averring that the *Powell* elements have been met.  *Id*. (citing *Conner*, 434 F.3d at 680; *Rockwell Intern., supra*, at 1262).

In this case, the United States and Arndt have submitted a copy of the summons and an affidavit from Revenue Officer Pattison in support of their complaint for enforcement.  Collectively, these exhibits establish that: (i) the IRS has been examining Beeman's federal income tax liability for the years 2000, 2001, 2002, 2005 and 2006; (ii) the summons is relevant to the investigation in that the information sought is needed in order to properly investigate Beeman's federal income tax liability for the years in question, (iii) the information sought is not already in the possession of the IRS, and (iv)

the IRS issued the summons in compliance with all administrative steps required by the Internal Revenue Code. (*See* Affidavit of Ed Pattison, attached as Ex. A to Complaint to Enforce Internal Revenue Service Summons [1] at ¶¶ 2-4, 9-11; Summons, attached as Ex. B to Complaint to Enforce Internal Revenue Summons [1].) Accordingly, these exhibits satisfy the Government's prima facie burden under *Powell*. *See Wheeler*, 459 F. Supp. 2d at 402; *McGugan v. Katzmar*, No. 05-2667(MLC), 2005 WL 3610040 at *3 (D.N.J. Nov.14, 2005); *Steiniger v. U.S. Comm'r of Internal Revenue*, No. 04-4044, 2005 WL 375653 at *3 (E.D.Pa. Feb.16, 2005); *Gaunt v. Internal Revenue Serv*., No. 96-0022, 1996 WL 376341 (M.D.Pa. May 1, 1996).

Once the Government satisfies its prima facie burden, the taxpayer retains the right to challenge the IRS's summons by disproving one or more of the *Powell* requirements or by otherwise demonstrating that enforcement of the summons will result in abuse of the court's process. *Rockwell Intern., supra*, at 1262; *Wheeler*, 449 F. Supp. 2d at 402. To do so,

> a taxpayer must factually oppose the Government's allegations by affidavit. Legal conclusions or mere memoranda of law will not suffice. *See Thornton v. United States*, 493 F.2d 164, 167 (3d Cir.1974). In the absence of such a response by the taxpayer, uncontested allegations in the Government's petition and affidavit must be accepted as admitted. Moreover, if at this stage the taxpayer cannot refute the government's prima facie *Powell* showing or cannot factually support a proper affirmative defense, the district court should dispose of the proceeding on the papers before it and without an evidentiary hearing.

*United States v. Garden State Nat. Bank*, 607 F.2d 61, 71 (3d Cir.1979). *See also Wheeler*, 459 F. Supp. 2d at 402; *Jackson v. United States*, No. Civ. A. 95-2863, 1995 WL 563815 at *2 (E.D. Pa. Sept. 21, 1995).

Here, Beeman has not asserted under oath specific facts that demonstrate the existence of either a genuine issue of material fact or a legally sufficient defense to the summons. *Smith v. Fournier*, 614 F. Supp. 314, 316 (E.D. Pa.1985). Although this Court has construed his two filings entitled "Specific Affidavit of Negative Averment, Opportunity to Cure, and Counterclaim[s]" (Docs. No. [7] and [9]) as responsive

17

pleadings, nothing in those documents amounts to factual opposition to the Government's allegations or a legally sufficient defense. Accordingly, no evidentiary hearing was even required. *Moutevelis v. United States*, 727 F.2d 313, 315 (3rd Cir.1984); *Wheeler*, *supra*, at 402-03. Notably, summons enforcement actions are intended to be summary in nature. *Rockwell Intern.*, *supra*, at 1261; *Jackson, supra*, at *2.

Nevertheless, this Court held a show cause hearing on October 16, 2009, at which time Beeman was afforded an opportunity to defend the Government's complaint for enforcement of the summons. Rather than offer any evidence in opposition to the Government's *Powell* showing or which could provide grounds for a proper affirmative defense to the summons, Beeman insisted on advocating his third-party/counter-claim. As Government counsel was summoned to address the Court, the following exchange with Beeman occurred:

> THE COURT: ... Mr. Skirtich, why don't you come up first and tell me what you want to say?
>
> MR. BEEMAN: I object.
>
> THE COURT: What are you objecting to?
>
> MR. BEEMAN: I'm the third-party plaintiff, there was no answer to my counterclaim.
>
> THE COURT: You're going to get a chance to tell me anything you want. But this isn't your opportunity. You sit down for a minute. As soon as Mr. Skirtich is done, you're going to have a chance to come up and tell me whatever you want, all right?
>
> MR. BEEMAN: I do not give you permission to do that.
>
> THE COURT: Well, I don't need permission to tell you to sit down. Now, sit down so Mr. Skirtich can go ahead, and then I'm going to hear everything you have to say.
>
> MR. BEEMAN: For the record, I object.
>
> THE COURT: All right, your objection is noted.

(Tr. of 10/16/09 Show Cause Hrg. [8] at pp. 2-3.)

After Government counsel asked for sequestration of any fact witnesses, the

Court inquired whether Beeman intended to introduce any factual testimony.  That elicited another objection from him.  (*Id*. at p. 3.)  The Court then inquired, "Well, do you have any testimony you want to put on?" to which Beeman replied, "I object.  For the record, I object, there was no response to my counterclaim." (*Id*.)  Government counsel then explained that, as per the Federal Rules of Civil Procedure, the Government had 60 days in which to respond to Beeman's counterclaims and its response was therefore not yet due.[8]  (*Id*. at pp. 3-4.)

Counsel for the Government subsequently addressed the complaint and clarified that the IRS is seeking only the documentation requested in the summons insofar as it relates to tax years 2000 and 2001, the Government having previously exhausted (unsuccessfully) all administrative avenues in an attempt to obtain that information. Beeman was then given an opportunity to defend the Government's request to enforce the subpoena, but his only substantive response was to assert his claim as a third-party plaintiff, *to wit*:

> THE COURT:  All right. Mr. Beeman, come on up here to the podium, if you would.  I told you I was going to give you an opportunity to talk and I'm going to do that right now.  In the affidavit, which you call a specific negative averment, you say that – you complain that a notice of lien was recorded in the Erie County Courthouse, is that right?
>
> MR. BEEMAN:  Judge, I'm here as a third-party plaintiff by special visitation and not appearing generally before the court seeking a remedy –
>
> THE COURT:  You've got to slow down.  See this fellow right here, he's the court reporter, he's trying to get everything down.  I read your pleading, but now you have to answer my question.  I'm trying to understand what the nature of your objections are.  And I want to give you a full opportunity to explain it to me.  But, number one, you got to talk slowly so he can get it down, fair enough.  Are you complaining that there was a lien that was improperly placed upon your assets?
>
> MR. BEEMAN:  As is provided by the Saving to the Suitors Clause, U.S. Code 28-1333 subsection (1).  I am standing in my unlimited commercial liability as a secured party creditor and request that the

---

[8] As this Court has explained *supra*, the Government timely filed its response on December 7, 2009.

officers of this court do the same.  I respectfully request the indulgence of this court as I am not schooled in law.  This is provided by the precedent set by *Haines v. Kerner* at 404 U.S. 519.

THE COURT:  That was in your pleading, and I read that before you came to court today.  I'm going to switch now to these records that the Internal Revenue Service is asking for, the tax records of – hang on a second, I'm not done.  The tax records of 2000 and 2001.  Do I understand that you do not want to turn those records over, but can you tell me what your defense is to that, I'm going to give you an opportunity to tell me that?

MR. BEEMAN:  I do not give you permission to ignore my counterclaim.

THE COURT:  Well, they don't have to answer your counterclaim yet.

MR. BEEMAN:  According to the Saving to the Suitors Clause, United States Code, 28-1333 (1) they do.

THE COURT:  Well, there is going to be an answer – are you going to answer the counterclaim within the time allotted by the rules?

MR. SKIRTICH:  Yes, your Honor.

THE COURT:  All right, they're going to answer it.  We're here on the summons, Mr. Beeman, and I fully appreciate that you're not schooled in the law. .... Now, we're here on this summons matter.  Do I understand that you do not, you refuse to turn over the records that the government is requesting?

MR. BEEMAN:  I'm a third-party plaintiff –

THE COURT:  All right, we're not going to get anywhere, sit down. ...

(Tr. at pp. 9-11.)

As the foregoing passages demonstrate, Beeman's only response to the Government's complaint to enforce the IRS summons was his attempt to advocate his third-party claim and counterclaim against Arndt and Pattison.  However, I have already determined, for the reasons previously explained, that those claims cannot survive summary judgment.  In any event, Beeman has made no assertions under oath to factually rebut any elements of the Government's *Powell* showing, and we therefore must accept the Government's uncontested allegations as true.  *United States v. Garden State Nat. Bank*, 607 F.2d at 71.  Nor has Beeman asserted any facts which could make out a legally sufficient defense to the summons.  *See id*.  Accordingly, the

20

Court will enter an order to enforce the IRS Summons as it pertains to the tax years still in question.

## IV.  CONCLUSION

For the reasons previously discussed herein, this Court will grant the motion for summary judgment filed by the United States, through Revenue Officers Pattison and Arndt.  The motion to dismiss filed by Third Party Defendants GE Client Business Services and Keith S. Sherin will also be granted.  The Court will enter the relief requested by the Government in its Complaint to Enforce Internal Revenue Service Summons.  The Government's pending motion to strike Beeman's answer to the complaint will be denied as moot.

An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA and )
MARY ARNDT, Revenue Officer )
of the Internal Revenue Service, )
)
         Plaintiffs, )
)
         v. )       Civil Action No. 1:09-cv-158-SJM
)
EBERT G. BEEMAN, )
)
         Defendant, )
)
         v. )
)
GE CLIENT SERVICE )
BUSINESSES, *et al.,* )
)
         Third-party Defendant. )

**JUDGMENT ORDER**

    AND NOW, *to wit*, this 19th day of February, 2010, for the reasons set forth in the accompanying Memorandum Opinion,

    IT IS ORDERED that the Motion of the United States for Summary Judgment [14] be, and hereby is, GRANTED.  JUDGMENT is hereby entered in favor of the United States and Revenue Officers Mary Arndt and Ed Pattison and against Defendant/ Third Party Plaintiff Ebert G. Beeman as to the claims set forth in the "Specific Affidavit of Negative Averment, Opportunity to Cure, and Counterclaim."

    IT IS FURTHER ORDERED that the Motion by GE Client Business Services and Keith S. Sherin to Dismiss All Purported Claims Asserted Against Them by Defendant Ebert G. Beeman [17] be, and hereby is, GRANTED.

    IT IS FURTHER ORDERED that the Plaintiffs' Motion to Strike Defendant's Answer [13] be, and hereby is, DENIED as moot.

IT IS FURTHER ORDERED that the Defendant, Ebert G. Beeman be, and hereby is, directed to comply with each and every requirement of the May 2, 2008 Internal Revenue Service Summons insofar as it relates to the calendar years ending December 31, 2000 and December 31, 2001.  Defendant's compliance shall include his attendance, testimony, and production of the books, papers, records, or other data relative to tax years 2000 and 2001 as is required and called for by the terms of the summons at such time and place as may be fixed by Revenue Officer Arndt or any other proper officer or employee of the Internal Revenue Service.

IT IS SO ORDERED.


s/      Sean J. McLaughlin
        SEAN J. McLAUGHLIN
        United States District Judge



cm:   All counsel of record

      and

      Ebert G. Beeman
      12746 Route 19 S
      Waterford, PA 16441-6190


23